## COTTINGHAM v. HERSHEY.
### No. 5254.

Circuit Court of Appeals, Third Circuit.
May 14, 1934.

Rehearing Denied June 25, 1934.

Harold K. Brooks and Cornelius D. Scully, both of Pittsburgh, Pa., for appellant.

Herbert M. Kidner, A. M. Oliver, and G. Richard Klare, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from an order by the District Court for the Western District of Pennsylvania. The plaintiff sued in assumpsit to recover upon an alleged oral agreement for the repurchase of stock sold to the plaintiff by the defendant. The salient facts set out by the plaintiff in his statement of claim are as follows:

The plaintiff was the controlling stockholder of Financial Service Bureau, Inc., which owned automatic candy vending machines. The defendant was an officer and stockholder of the Eatmor Chocolate Company. The plaintiff orally agreed that he would cause to be sold, transferred, and delivered to the defendant all the vending machines and other enumerated assets of Financial Service Bureau, Inc.; that he would cause one Meeker to purchase preferred capital stock of the Eatmor Chocolate Company for $3,000; and that he would give the defendant $4,000 in cash. In consideration of these undertakings by the plaintiff, the defendant agreed to sell and deliver to the plaintiff 40 shares of preferred stock of the Eatmor Chocolate Company at $100 a share and 1,000 shares of common stock, and to sell and deliver to Meeker 30 shares of preferred stock. The defendant stated to the plaintiff that the common stock had a book value of $38 per share, and orally promised that he would repurchase from the plaintiff the 1,000 shares of common stock at $25 per share at the end of three years if the plaintiff tendered the stock to him at that time. At the end of the three years, the plaintiff tendered the stock, but the defendant refused to repurchase it.

In paragraph 8 of the affidavit of defense, the defendant admitted that he had entered into an oral contract with the plaintiff for the purchase of the assets of Financial Service Bureau, Inc., and that he had agreed to sell and deliver to Meeker preferred stock, and to the plaintiff common and preferred stock of the Eatmor Chocolate Company. He denied that the plaintiff was instrumental in effecting the sale to Meeker or that the price for the common stock was fixed at $25 per share, or that he represented the book value to be $38 per share, or that he agreed to repurchase at the end of three years. In paragraph 13, the defendant as a further answer pleaded: "For further answer to the said Statement of Claim, the defendant alleges and avers that the entire agreement and transaction between himself and the plaintiff consisted of the purchase of certain vending machines, etc., from the plaintiff by the defendant. That the defendant in consideration of the transfer of said vending machines and $4,000 in cash agreed to transfer certain capital stock, both common and preferred, of said Eatmor Chocolate Company to the plaintiff. Defendant further says that that was the entire arrangement between himself and the plaintiff and that nothing was said about the repurchase of the said stock

at any time. He further says that the said vending machines and cash were delivered to him by the plaintiff and that he delivered said forty (40) shares of preferred stock and 1,000 shares of common capital stock of said Eatmor Chocolate Company to the plaintiff and that thereupon the said contract or arrangement between plaintiff and defendant was finally determined and completed."

The issue therefore was clear-cut. Did the defendant make an oral agreement with the plaintiff to repurchase the common stock at $25 per share if the plaintiff tendered at the end of three years? This issue was presented to the jury and, upon sufficient evidence, a verdict was returned for the plaintiff.

The defendant thereupon petitioned for a new trial and for leave to file an amended affidavit of defense. The reasons assigned by him were that his contract was not with the plaintiff but with the Financial Service Bureau, Inc.; that this contract was written and not oral; that the written contract could not be altered except upon proof of fraud, accident, or mistake; that he did not enter into any oral agreement with the plaintiff; that the plaintiff and Meeker induced him to transfer the 1,000 shares of common stock by agreeing to advance $7,000 to him; that the vending machines which were transferred to the Eatmor Chocolate Company were practically worthless; and that the value of the stock did not exceed $10,000. The court allowed a new trial and gave leave to file an amended affidavit of defense on the ground that "grave injustice will be done the defendant unless he is permitted to present the defense outlined in his proposed amended and supplemental affidavit of defense."

The theory of the defendant, as contained in the amended affidavit of defense, is that the exhibits attached thereto constitute and comprise the sole and entire contract between the parties; that these exhibits show that Financial Service Bureau, Inc., and not the plaintiff, was the other party to the contract; and that these exhibits do not contain a promise on the part of the defendant to repurchase the common stock.

■ Do the exhibits, attached to the amended affidavit of defense, confirm the defendant's contentions? We think not. The letter addressed to the attention of Meeker and offered in evidence as Defendant's Exhibit A contains statements that the plaintiff had agreed to transfer to the defendant the equipment owned by Financial Service Bureau, Inc., and to assume its liabilities. The letter contained an inquiry whether the plaintiff

wished to have 1,000 shares of common stock and 40 shares of preferred stock of the Eatmor Chocolate Company issued to him. Exhibit B is a copy of Meeker's reply which was notice to the defendant that the agreement for the sale of the machines and the transfer of the stock was with the plaintiff. Exhibit C is a copy of the minutes of a meeting of the directors which contained the statement that the defendant had offered to issue 1,000 shares of common stock of the Eatmor Chocolate Company to Financial Service Bureau, Inc., or its nominees. Exhibit D is a copy of a waiver of notice and of the minutes of a special meeting of Financial Service Bureau, Inc., at which the offer of purchase was accepted by the stockholders. Exhibit E is a letter from the plaintiff to the defendant containing instructions as to the manner in which the certificates for the common and preferred stock should be made out. All of these exhibits confirm the plaintiff's testimony as to the carrying out of the agreement between the plaintiff and the defendant, and add nothing to the evidence presented at the trial of the cause.

■ The fact that the contract for the sale of the assets of Financial Service Bureau, Inc., was partly in writing does not preclude the conclusion from the evidence that the contract for the repurchase of the stock was oral.

■ The new trial and the amended affidavit of defense were allowed by the court because of its conclusion that this was necessary in order to prevent a grave injustice being done. In spite of a thorough study of the petition for a new trial, the amended affidavit of defense, and the exhibits, we cannot reach a similar conclusion. No new facts were discovered by the defendant after trial. When the defendant prepared for trial, he had knowledge as to the facts now sought to be pleaded, and he was not precluded from pleading these facts by accident, mistake, or misfortune. The amendments requested and allowed at this late stage of the proceedings amount to a new defense. The allowance of the amendments, the new defense, and the new trial tends to offer an inducement to perjury, since in the new affidavit of defense the defendant has sworn to facts which cannot be true if the averments in the original affidavit of defense are true. We conclude that the allowance of the amendments and the new trial was not made by the court in the exercise of a sound discretion, but was an expansion of discretionary power beyond the limits to which that power may lawfully be extended. American Mills Co. v. Hoffman

(C. C. A.) 275 F. 285. Great Northern Railway Co. v. Herron (C. C. A.) 136 F. 49.

The cause is remanded to the court below for further proceedings not inconsistent with this opinion.